[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 21-10077

Non-Argument Calendar

_____

CHRIS M. MILLER,

Petitioner-Appellant,

*versus*

SECRETARY, DEPARTMENT OF CORRECTIONS,
ATTORNEY GENERAL, STATE OF FLORIDA,

Respondents-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 8:17-cv-02815-TPB-AEP

_____

Before WILSON, BRASHER, and BLACK, Circuit Judges.

PER CURIAM:

Chris M. Miller, a Florida prisoner serving a life sentence for kidnapping, aggravated battery, and aggravated assault with a deadly weapon, appeals the district court's denial of his 28 U.S.C. § 2254 petition. Miller asserted trial counsel was ineffective for failing to introduce the victim's blood alcohol test results at trial. The state postconviction court denied relief on the issue, and the district court denied Miller's § 2254 petition, concluding that because trial counsel raised serious doubts about the victim's credibility even without the blood alcohol test results, the state court did not unreasonably apply *Strickland v. Washington*, 466 U.S. 668 (1984). We granted a certificate of appealability on one issue: Whether the state court's denial of Miller's claim, that trial counsel was ineffective for failing to introduce the victim's blood test results, was based on an unreasonable application of *Strickland*. After review,[1] we affirm.

---

[1] We review *de novo* a district court's decision about whether a state court acted contrary to or unreasonably applied clearly established federal law. *Reed v. Sec'y, Fla. Dep't of Corr.*, 593 F.3d 1217, 1239 (11th Cir. 2010). Thus, we review the district court's grant or denial of a § 2254 petition *de novo*, but we owe deference to the state court's judgment. *Id.*

## I.  28 U.S.C. § 2254

A federal court cannot grant habeas relief on a claim that was "adjudicated on the merits in State court proceedings" unless the state court's decision was (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  A state court decision involves an "unreasonable application" of clearly established Federal law where the state court "correctly identified the governing legal principle" from Supreme Court precedent but "unreasonably applied it to the facts of the particular case."  *Barnes v. Sec'y, Dep't of Corr.*, 888 F.3d 1148, 1155 (11th Cir. 2018) (alterations omitted).  The state court's decision must be "objectively unreasonable, not merely wrong," such that it was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement."  *Id.* at 1155-56 (quotation marks omitted).

"Deciding whether a state court's decision involved an unreasonable application of federal law requires the federal habeas court to train its attention on the particular reasons—both legal and factual—why state courts rejected a state prisoner's federal claims, and to give appropriate deference to that decision."  *Meders v. Warden, Ga. Diagnostic Prison*, 911 F.3d 1335, 1349 (11th Cir. 2019) (alterations omitted).  To determine whether the state court reasonably applied a rule, federal courts must consider the

specificity of the rule, and "[t]he more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quotation marks omitted). Because the *Strickland* standard is general, there is a substantial range of reasonable applications by state courts. *Id.* at 105.

## II. STRICKLAND V. WASHINGTON

Under *Strickland*, to succeed on an ineffective assistance of counsel claim, a petitioner must show that (1) his counsel's performance was deficient and (2) the deficient performance prejudiced his defense. *Strickland*, 466 U.S. at 687. "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Id.* at 697. To prove the prejudice prong under *Strickland*, the defendant must show a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* at 694. A reasonable probability is one sufficient to undermine confidence in the outcome of trial. *Id.* It is not enough for the defendant to show the error had some conceivable effect on the outcome of the proceeding. *Id.* at 693. Rather, counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Harrington*, 562 U.S. at 104 (quotation marks omitted). Thus,

> a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been

unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.

*Strickland*, 466 U.S. at 695-96.

## III.  STATE COURT PROCEEDINGS

After Miller and his girlfriend, Annette Ystrom, returned home after attending an outdoor fair together, Miller beat Ystrom, punched her, and kicked her. During the four-hour attack, Miller threatened to kill Ystrom with a knife and prevented her from leaving. The victim's body was badly bruised and an emergency room doctor was unable to conclude whether the many bruises on Ystrom's body were caused by the leg of a stool or a fist. The jury found Miller guilty, and the trial court sentenced him as a prison releasee reoffender to life for kidnapping, fifteen years for aggravated battery, and five years for aggravated assault. The state appellate court affirmed in a written opinion and the Florida Supreme

Court denied discretionary review. *Miller v. State*, 123 So. 3d 595 (Fla. 2d DCA 2013), *rev. denied*, 139 So. 3d 887 (Fla. 2014).

Miller filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850 in Florida's Sixth Judicial Circuit Court. As relevant to the issue in the COA, the court determined "that although counsel may have been deficient for failing to properly introduce the victim's blood alcohol level, [Miller] is unable to show prejudice as required by *Strickland*." That court found:

> the jury was not deprived of significant evidence challenging the victim's credibility and her ability to accurately perceive the events which occurred on the night at issue, as Defendant claims. It is undisputed that Defendant beat the victim on the night at issue. The defense's theory, however, was that Defendant did not commit the crimes charged, but rather committed crimes of a lesser degree than the ones charged. Counsel highlighted the fact that the victim had been drinking throughout the day and night of the events, and even suggested in his closing argument that the victim's anxiety medication mixed with alcohol consumption could have caused her confusion regarding her recollection of the events that transpired.

> Furthermore, counsel pointed out an extensive number of inconsistencies within the victim's story, thereby greatly challenging the victim's credibility and exposing her confusion over the events which occurred on the night at issue. More specifically, in

regards to the kidnapping charge, counsel elicited testimony from the victim that there were multiple exits to the home and that there were multiple phones in the home that she could have used to call for help. Counsel also suggested that from the victim's story, there was a lot of time where she was by herself; and, suggested that the fact that the victim took a long time to leave the residence and even returned to the bedroom where the [Defendant] was showed that the victim was not truly being kept in the home against her will. Additionally, counsel pointed out that when the victim finally left the residence, she did not immediately call the police or wake her friends whose house she parked outside of to tell them that Defendant had kidnapped her, but rather, she attempted to sleep in her car across the street from where Defendant was still sleeping.

In regards to the aggravated battery charge, counsel pointed out that the victim had told multiple officers that Defendant hid the stool leg in the garage, yet at trial she changed her story and indicated that she was the one who hid the stool leg in the garage. Additionally, counsel highlighted the fact that the victim's injuries were consistent with being beaten with Defendant's hands and feet, and that a stool leg may not have been used on the victim. Counsel also pointed out that the victim had previously told one of the officers that she had seen Defendant break the stool leg off, yet at trial she testified that she did not see or hear Defendant break the stool leg off despite being in the

next room.  Counsel pointed out that Defendant's fingerprints were not found on the stool leg; and, that the permanent disfigurement the victim claims was from bolts on the stool leg did not match up to the same distance apart as the bolts on the stool leg.

Finally, in regards to the aggravated assault charge, counsel thoroughly attacked this charge by eliciting witness testimony demonstrate[ing] the victim's confusion.  More specifically, counsel cross-examined the victim regarding the size and style of the knife she claimed Defendant held to her, and was able to demonstrate her confusion over those specifics. Counsel also showed that no knife was ever turned over to the police or to the State Attorney's office, but rather that the victim merely drew a trace outline of the knife.  Additionally, counsel demonstrated the victim's confusion regarding the distance where Defendant placed the knife in relation to her throat and also where Defendant placed the knife after holding it up [to] the victim.

In light of the foregoing, the record reflects that counsel was able to thoroughly and adequately attack the victim's credibility and her recollection of the events at issue even without the results of the victim's blood alcohol level.  Given the number of inconsistencies defense counsel exposed, and including exploiting the fact that alcohol was consumed by the victim throughout the day and night of the events at issue, the Court finds that the record refutes Defendant's claim that there is a reasonable probability that the

outcome of the trial would have been different had counsel properly admitted the victim's blood alcohol level into evidence. Defendant fails to meet the prejudice prong, and this claim is therefore denied.

Final Order Denying Defendant's Motion for Postconviction Relief entered Dec. 17, 2015 (internal citations omitted).

## IV. CONCLUSION

We have reviewed the state court record and the state court's recitation of the facts on which it based its legal conclusion is correct. The state court's application of *Strickland* was reasonable. *See* 28 U.S.C. § 2254(d). It was reasonable for the state court to conclude that trial counsel's performance regarding the blood alcohol test results, even if deficient, was not prejudicial. *See Strickland*, 466 U.S. at 694. More specifically, because counsel exposed numerous inconsistencies in Ystrom's story and the jury still convicted Miller, there was not a reasonable probability that additional impeachment vis-à-vis the test results would have changed the jury's verdict. *See id.* at 695-96.

Because Miller's trial counsel exposed numerous inconsistencies in Ystrom's testimony, a fair-minded jurist could agree with the state court that the result of Miller's trial was reliable even if counsel's performance was deficient. *See Strickland*, 466 U.S. at 694; *Harrington*, 562 U.S. at 104. Miller has failed to show the state court's reasoning was objectively unreasonable and has failed to identify "an error well understood and comprehended in existing

law beyond any possibility for fairminded disagreement." *See Barnes*, 888 F.3d at 1155-56.

**AFFIRMED.**